

FILED
FEB 0 8 2010

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | | |
|---|---|---|
| MONTANA-DAKOTA UTILITIES CO., A DIVISION OF MDU RESOURCES GROUP, INC., | ) ) ) ) | CIV. 10-_1005_ |
| PLAINTIFF, | ) ) | |
| -vs- | ) ) | **COMPLAINT** |
| SOUTH DAKOTA INTRASTATE PIPELINE COMPANY, | ) ) ) ) | |
| DEFENDANT. | ) | |

COMES NOW the Plaintiff, by its undersigned counsel of record, and for its complaint against the Defendant, states and alleges as follows:

**Allegations Common to All Counts**

1. Plaintiff is a foreign corporation incorporated under the laws of Delaware with its principal place of business in Bismarck, North Dakota.

2. Defendant is a corporation incorporated under the laws of South Dakota with its principal place of business in Pierre, South Dakota.

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties' citizenship is diverse and the amount in controversy exceeds $75,000. This court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a public utility providing electricity and natural gas to customers in predominantly urban areas at various locations in the state of South Dakota, including the Pierre-Fort Pierre area.

5. Defendant is an intrastate pipeline company providing natural gas pipeline transportation services to the public in the state of South Dakota. Plaintiff is a customer of Defendant.

6. As a natural gas pipeline operator, Defendant is subject to minimum safety requirements for pipeline facilities and the transportation of gas. 49 U.S.C. § 60101, et. seq. Through its Public Utilities Commission (PUC), South Dakota has undertaken to regulate pipeline facilities and the transportation of gas within the state as authorized by Federal law, upon certification from the State that it is has undertaken certain specific regulatory responsibilities. 49 U.S.C. § 60105.

7. A pipeline inspection gauge, known as a "PIG" in the industry, is used for multiple purposes in gas pipelines, including pipeline inspection and removal of debris. A series of events involving PIGing operations by Defendant violated Defendant's pipeline tariff and caused extensive damage to Plaintiff's Pierre Town Border Station on February 20, 2008. These events included:

    a. On December 2, 2006, Defendant inserted a PIG configured as a bristle pipeline cleaning device at the Mina takeoff from the Northern Border Pipeline in an attempt to remove rust and debris from its pipeline prior to sending an inspection PIG through the

pipeline. The cleaning PIG became lodged in a valve setting and was not removed until the following summer at which time the pipeline was cut and the PIG was removed from the valve. Plaintiff had issued a letter to Defendant dated December 13, 2006, expressing its concern and requesting a plan of action to remove the PIG. Defendant's response to this letter recognized that it was ". . . keenly aware of it's [sic] obligation to transmit gas in [a] safe manner . . ." and would ". . . operate in a manner that is reliable and safe . . .." As a pipeline operator, as well as from the course of dealing between the parties and through periodic communications with Plaintiff, Defendant well knew Plaintiff's concern over the damage creating potential for uncontrolled PIGs.

b. On October 22, 2007, Defendant inserted another PIG in its pipeline at the inlet of valve 63. Shortly thereafter the location of the PIG became unknown.

c. On February 5, 2008, Defendant inserted another PIG which emitted a signal to track the movement of the PIG in an attempt to dislodge and move the first PIG through the pipeline. The location of this PIG also became unknown.

d. On the morning of Friday, February 15, 2008, representatives of Plaintiff asked Defendant for an update on the location of the lost

    PIGs. They were informed that the PIGs were likely stuck between Onida and Pierre.

e. On February 20, 2008, the first PIG arrived uncontrolled due to Defendant's mishandling of the PIGing process at the Pierre Town Border Station. The resulting volume of rust and debris collapsed filters in both Plaintiff's and Defendant's stations, allowing rust and debris to enter the regulator station and causing damage to equipment, a gas leak and fire. Because of the filter failure additional harmful rust and debris entered Plaintiff's distribution system.

f. On December 15, 2009, the second PIG arrived uncontrolled due to Defendant's mishandling of the PIGing process, again damaging equipment and collapsing filters, thus again thrusting harmful rust and debris into Plaintiff's system.

### Count 1. Breach of Contract

8. The business relationship between the parties was at all times relevant to the issues in this action governed by an Amended and Restated Transportation Agreement dated September 1, 1993 (Transportation Agreement) and a tariff dated April 9, 1996 (Gas Rate Schedule). The Transportation Agreement and the Gas Rate Schedule were in full force and effect and the Gas Rate Schedule was duly approved by the PUC at all times relevant to this action.

4

9. Paragraph 4.1.1 of the Transportation Agreement provided in part:

> The gas shall not contain sand, dust, gums, crude oil, impurities or other objectionable substances which may be injurious to pipelines or may interfere with the transmission of the gas.

As knowledgeable businesses in the industry the parties well knew this quality standard to be commonly known and used in the industry to assure gas customers a product free of harmful substances, debris and rust to prevent damage to both distributor and customer equipment.

10. Paragraph 10.1 of the Transportation Agreement provided in part:

> Transporter (Defendant) shall be in exclusive control and possession of such gas while same is in the System between the points of receipt and the points of delivery. The party which shall be in exclusive control and possession of such gas shall be responsible for all injury or damage caused thereby.

11. The Gas Rate Schedule in Schedule No. 5, Original Sheet No. 1 provided in part:

> The gas shall not contain sand, dust, gums, crude oil, impurities or other objectionable substances at a level which may be injurious to pipelines or may interfere with the transmission of gas.

As knowledgeable businesses in the industry the parties well knew this quality standard to be commonly known and used in the industry to assure gas customers a product free of harmful substances, debris and rust to prevent damage to both distributor and customer equipment.

12.     Defendant violated the provisions of its tariff by failing to deliver pipeline quality gas to plaintiff, free from sand, dust or other substances that would be injurious to pipelines and interfere with the transmission of gas. Rust is a substance that is injurious to Plaintiff's system.

### Count 2.  Negligence

13.     Defendant was negligent; (a) in failing to follow accepted industry practices to locate and control PIGs in unknown locations by exerting positive control, especially where weather fluctuations can produce consumption-based surge pressures causing PIGs to operate uncontrollably within the pipeline resulting in infiltration of excessive amounts of rust and debris; and (b) in failing to maintain, consult and utilize its procedural manual for operations, maintenance and emergencies as required by 49 CFR § 192.615.

14.     As a direct and proximate cause of Plaintiff's breach of contract and negligence Plaintiff has been damaged in the amount of $175,645.05 for the cost of replacement and repair of portions of Plaintiff's system, consisting of the cost of labor, material, work equipment, worker expenses, office supplies, permitting and freight.

WHEREFORE Plaintiff prays judgment against Defendant for its damages in the amount of $175,645.05, plus Plaintiff's costs and disbursements and prejudgment interest and post judgment interest.

Dated this 8th day of February, 2010.

        MAY, ADAM, GERDES & THOMPSON LLP

        BY: _/s/ David A. Gerdes_
        DAVID A. GERDES
        JUSTIN L. BELL
        Attorneys for Plaintiff
        503 South Pierre Street
        P.O. Box 160
        Pierre, SD   57501-0160
        Telephone: (605) 224-8803
        Telefax: (605)224-6289
        Gerdes E-mail: dag@magt.com
        Bell E-mail: jlb@magt.com